**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF GEORGIA**

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2016 JUL 26  AM 10: 04

CLERK _____
SO. DIST. OF GA.

| | | |
|---|---|---|
| EDDIE MITCHELL | : | |
| Plaintiff | : | |
| | : | |
| | : | |
| v. | : | Civil Action No:  **CV316-062** |
| | : | |
| | : | |
| GEORGIA DEPARTMENT OF | : | |
| CORRECTIONS, | : | |
| | : | |
| BETSY THOMAS, Director of Human | : | |
| Resources, | : | |
| | : | |
| JAMES R. LAINE, Director of Human | : | |
| Resources (Retired), | : | |
| | : | |
| | : | |
| Defendant(s) | : | |
| | : | |

## COMPLAINT

1. Defendant is a citizen of the United States and resides at _300 Patrol Road, Forsyth, GA 31029._

2. Defendant(s) names(s)  Betsy Thomas and James R. Laine

   Location of principal office(s) of the named defendant(s)   300 Patrol Road, Forsyth, GA 31029.

   Nature of defendant(s)' business Adult Corrections

   Approximate number of individuals employed by defendant(s) Greater than 500

3. This action is brought pursuant to Title VII of the Civil Rights Act of 1964 for employment discrimination. Jurisdiction is specifically conferred on the Court by 42 U.S.C. § 2000e-5. Equitable and other relief are also sought under 42 U.S.C. § 2000e-5(g).

4. The acts complained of in this suit concern:

   (A) _____ Failure to employ me.
   (B) ___X___ Termination of my employment.

(C)  _____ Failure to promote me.
(D)  ____X____ Other Acts as specified below:

Retaliation_____

_____

_____

5.    Plaintiff is:

(A)  _____ presently employed by the defendant(s).
(B)  _____X_____ not presently employed by the defendant(s).

The dates of this employment were August 1, 2014 to December 31, 2015

Employment was terminated because:

(1)  _____X_____ plaintiff was discharged.
(2)  _____ plaintiff was laid off.
(3)  _____ plaintiff left the job voluntarily.

6.    Defendant(s) conduct is discriminatory with respect to the following:

(A)  _____X_____ my race.
(B)  _____ my religion.
(C)  _____X_____ my sex.
(D)  _____ my national origin.
(E)  _____ other as specified below:

_____

_____

7.    The name(s), race, sex, and the position or title of the individual(s) who allegedly discriminated against me during the period of my employment with the defendant(s) company is (are) 1. James R. Laine, male, Human Resources Director (Retired). 2. Betsy Thomas, caucasian female, Human Resources Director.

8.    The alleged discrimination occurred on or about  December 18, 2015_____

9.    The nature of my complaint, i.e., the manner in which the individual(s) named above discriminated against me in terms of the conditions of my employment, is/are as follows:

1.   Employees accussed of more serious actions treated more lenient and/or different – During fiscal year 2014, I worked at Johnson State Prison. While there, a female nurse brought a gun in to the facility. The defendants did not terminate her or drive to the facility to investigate. During the same fiscal year, a student in the GED Fastrack Program died after complaining of severe headaches to nursing staff but was sent back to his cell. No medical staff (consisting of white males, black and white females) was terminated for this while I was

assigned to this facility. In addition during the July 2015 Educational Conference in Macon, a white male teacher interrupted Dr. L.C. Evans (Assistant Commissioner) during his speech to take issue with a statement from Dr. Evans. His actions were dismissed as being passionate about the inmates he taught. However when I petitioned the Department of Administrative Services (DOAS) to grant my back pay, which the Governor's Office suggested, (see attachments 'letter to governor" Exhibit 1 and "governor response"Exhibit 2), I received an at will termination personally delivered by the defendant Betsy Thomas. Ms. Thomas drove approximately 90 miles one way to deliver this notice on December 18, 2015. The letter and notice only contained the names of the defendants and not my immediate supervisors (Deputy Warden Cathy Lewis, Regional Principal Dr. Heather Vickers, and Education Director Stevie Edwards, see attachment termination notice Exhibit 3). As a matter of fact, my site supervisor, Deputy Warden Cathy Lewis, did not know why I was terminated. She had made several requests to Dr. Vickers and Mr. Edwards to expand my duties over into the administrative/supervisory realm. They both denied the request stating teachers can not have supervisory duties.

During fiscal year 2015 at Telfair State Prison, the librarian, Mildred Hamilton (black female) was accussed of allowing an inmate to gain access to an internet based program. She was not dismissed. I also witnessed a black female correctional officers refusing to take a certain post even after being given orders to do so by her supervisor and termination did not occurred.

2. Employees accussed of similar actions treated differently – This one is a little tougher to address because my cause of termination was not given. However I will provide examples of people who acted and preformed their duties in a similar way as me. First there was Dr. Ruth Spaulding (black female), who teaches GED courses at Telfair State Prison. After the Education Department failed their state audit, she was told not to leave a briefing. She did leave and after returning was told she would be written up by Deputy Warden Cathy Smith. Similarly, Mrs. Anne Moore (black female) who teaches adult basic education at Telfair State Prison was ordered back to her classroom by Deputy Warden Cathy Smith. Mrs. Moore stated she would return to her classroom after she completed her complaint against Deputy Warden Smith. Deputy Warden Smith told her to return immediately, Mrs. Moore did not comply. She continues to work at Telfair State Prison.

3. My Replacement (white male) was treated more favorably: My replacement did not possess a doctorate degree, no advanced placement certification in statistics, no full time experience in the correctional system, and no experience in a close security prison. However he was introduced as the new supervisor of Mrs. Moore and Dr. Spaulding. This was very surprising since Deputy Warden Cathy Lewis has requested the same duties for me without success. I can not understand why she was allowed to grant this title to him. My replacement was also allowed to not hold classes much longer than I even though he had a classroom and a local supervisor in Deputy Warden Cathy Lewis. I was ordered to begin teaching duties immediately by Dr. Vickers even though I did not have a classroom nor a local supervisor (see attachment GED summary report Exhibit 4).

Dispite all the inequity, I never had one disciplinary notice, maintained excellent work evaluations, continually increased the number of inmates taking and passing

the GED examination while at Telfair State Prison, and continued to recruit and build the popularity of the GED program at Telfair State Prison. I not only did my job, I did it well (see attachment Georgia Department of Labor Exhibit 5 and GED Summary Report Exhibit 4). The defendants became upset that a black male pointed out the mistakes the human resources department were making with his pay. This process started after I discovered my pay was incorrect. The defendants finally agreed but tried to say the mistake was my fault. My pay was adjusted, but backpay was not assigned. When I appealed to the Department of administrative services a termination notice was delivered to me even though my job performance was very good. I then appealed to the Adverse Action Committee and they denied my request within a week. This is the only committee with investigative powers that I could turn to and they did not investigate and/or did not investigate thoroughly. The Adverse Actions Committee just stated the never before used policy "State Personnel Board Rule 47&1-.15(7) states: Involuntary Separations: An agency may terminate an unclassilied employee as deemed necessary to meet the needs of the agency and in keeping with State and Federal laws and guidelines". This rule should not have been applied given defendants Betsy Thomas and James R Laine were the driving force behind my termination and it was a retalitory response. Moreover they had no input into my daily job responsibilities and hence no relevant knowledge of my job performance. They also improperly applied this rule due to the fact Ms. Thomas and Mr. Laine were retaliating and discriminating against me.

Finally, the Department of Corrections needs highly qualified, certified, motivated, and dedicated educators like myself to carry out Governor Deal's vision for the education of Georgia inmates. I never had a disciplinary notice from any supervisor, nor a complaint from the inmates that I educated; I followed the core values of the Department of Corrections (see attachment core values Exhibit 6); my annual review was excellent and I continually increased the number of inmates taking and passing the GED exam. These facts alone support my argument of wrongful termination. The argument of discrimination is supported by the following facts: others accussed of committing more serious actions were treated more lenient; others accussed of committing similiar actions were treated differently; my replacement was giving responsibilities denied to me even though his professional credentials were less than mine; my job performance was very good, and there were no notice of poor performance ever given to me by any supervisor. Therefore I ask that my request for relief be granted.

10.    The alleged illegal activity took place at  Telfair State Prison in Telfair County Georgia

11.    I filed charges with the Equal Employment Opportunity Commission regarding defendant(s)' alleged discriminatory conduct on or about December 22, 2015. I have attached a copy of the Notice of Right to Sue letter issued by the Equal Employment Opportunity Commission. This letter was received by me on  June 3, 2016

12.    I seek the following relief:

(A)    ____X____ recovery of back pay.
(B)    _____ reinstatement to my former job or position.
(C)    ____X____ front pay (where reinstatement is not suitable).
(D)    _____ damages (damages are recoverable only in age discrimination cases and only for "willful violations" of the Act.
(E)    ____X____ injunctive relief.
(F)    ____X____ expenses and attorney's fees.
(G)    ____X____ other (describe below):

Pain and Suffering and Replace Termination Notice with a Separation Notice

 July 22, 2016
Date

*[Signature: Eddie Mitchell]*
Signature of Plaintiff

Address of Plaintiff:

32 West Bruce Street

McRae, GA 31055

Phone Number:  770-843-3897

Attachments: Right to Sue Notice, Letter to Governor, Response from Governor, Termination Notice, Teacher Certification, Advanced Placement Certification, GED Summary Report, Georgia Department of Labor Final Action, Waiver of Service, Letter to DOAS and Department of Corrections Core Values.

# ATTACHMENTS

1. EXHIBIT 1 – LETTER TO GOVERNOR

2. EXHIBIT 2 – GOVERNOR RESPONSE

3. EXHIBIT 3 – TERMINATION NOTICE

4. EXHIBIT 4 – GED SUMMARY REPORT

5. EXHIBIT 5 – GA DEPT OF LABOR ACTION

6. EXHIBIT 6 – CORE VALUES

7. EXHIBIT 7 – RIGHT TO SUE

8. EXHIBIT 8 – WAIVER OF SERVICE

9. EXHIBIT 9A – TEACHER CERTIFICATION

    9B – STATISTICS CERTIFICATION

10. EXHIBIT 10 – LETTER TO DOAS

# EXHIBIT 1 – LETTER TO GOVERNOR

Dr. Eddie E. Mitchell
32 Bruce Street
McRae, GA 31055
PH: 770-843-3897

Office of the Governor
206 Washington Street
111 State Capitol
Atlanta, GA 30334

December 11, 2015

Re: Back Pay Issue

Dear Governor Deal,

I would first like to wish you, your wife, family and your staff a happy holiday season. It is with a heavy heart that I write you concerning a pay issue with the Georgia Department of Corrections Human Resources (GDCHR). I started a full time teaching position at Johnson State Prison in August 2014. I completed an application and new employee package, with consisted of a State of Georgia application, resume, experience verification and other documents. These documents were turned in to the human resources department at Johnson State Prison.

Parts of these documents were used in the determination of my annual salary. That salary was determined to be approximately $75,000 per year. I immediately contacted the human resources director, Cynthia Chester, and stated to her my salary seemed a little low. I based this on the fact I had worked as a teacher at the Georgia Department of Juvenile Justice (GDJJ) and my salary there was nearly $90,000 per year. Mrs. Chester told me salary was determined at the central office, but she would inquire about my concerns. When Mrs. Chester reported back to me, she stated my salary was correct and no adjustment would be made. Since I was new to GDC, I accepted the response and assumed salaries were calculated much different than GDJJ. I continued on under this assumption for about a year. Then in June 2015 I saw another teacher with a GDC teacher salary schedule and asked to review it. It was then that I realized my salary should have been $89,000 per year.

Armed with information, I asked Mrs. Chester to revisit my salary issue. She again contacted central office and that is when I learned how my salary was calculated. They were basing it on 7, 8 years of experience. I responded stating I should be paid for 14 years of teaching experience plus 3 years of military experience. If I knew of this error from the beginning, it could have been easily corrected. I then sent in a copy of the salary verification form and thought my pay would be immediately corrected. However it was not because GDCHR took issue with the verification form. I then asked the education manager, Mr. Stevie Edwards, to intervene because he was an administrator familiar with that document. He also requested a copy of my military DD214 form.

I submitted those documents and a signed statement from the Superintendent of Turner County Schools (the last school district I worked in) stating my verified years of experience. GDCHR was still not satisfied. The most unbelievable thing is the salary verification form came from GDJJ, a sister state agency. All they needed to do is call GDJJ and have any documents they needed sent to them. Therefore my salary adjustment and back pay was once again denied. After another round of talk with Mr. Edwards, I emailed him a copy of the documentation from the Department of education website that approved experience for pay of military service. GDCHR

then approved three more years of experience for military service which brought my salary to $81,000 per year. However the rest of my request remained denied.

Mr. Edwards then came to visit me at Telfair State Prison. He asked me to submit a list of all my teaching experience to Ms. Betsy Thomas of GDCHR. I did not understand this request because all of this was available through GDJJ. However I complied and sent to information to Ms. Thomas and copied him. Finally on November 30, 2015 I received the first check with the correct salary of $89,000 per year. I then emailed Ms. Thomas to inquire when the back pay check would arrive since it had been proven I was underpaid from August 2014 to mid November 2015. To my surprise, she stated I would not be receiving back pay.

This started another round of discussions which included Mr. Edwards, Deputy Commissioner Dr. Buster Evans, and finally HR Director Mr. Jim Laine. I am sad to say no agreement has been reached. Now I am reaching out to your office in hopes of a non biased resolution. GDCHR is claiming they did not make any mistakes and it is my entire fault. Therefore no back pay will be issued. However I want you to consider the following two scenarios and judge which one is most likely to have occurred.

### Scenario 1: GDCHR is free of any responsibility

For this to be true, the initial $75,000 salary would have to be issued. Then after I inquire about it being low, they would describe how this salary was calculated. They would also have to explain to me to receive an adjustment additional experience must be submitted. I would then have to intentionally refuse to submit this document (which I had in my possession since 2012 and it was from GDJJ, a sister state agency) and expect a $14,000 per year pay cut.

### Scenario 2: GDCHR has some responsibility

For this to be true, the initial $75,000 salary would have to be issued. Then after I inquire about it being low, GDCHR states it is correct without explaining why. I learn several months later it was in fact wrong and submit requested documents.

When you review these two scenarios which one seems more likely to have occurred to any reasonable person. I have no idea why they did not have the experience verification from the start. Maybe it was misplaced or lost, but that I can not answer for sure. All anyone can truly confirm is a mistake was made and it should be fully corrected. I am asking that your office look into this matter and correct this wrong. All of the staff at these secured facilities work in a high stress and dangerous environment. I don't think it is too much to ask of support personnel to all they can to not contribute to the stress that is already there. I went ten months unknowing of my underpayment. Once this error was realized, it took another five months to adjust the salary. How long will it take to receive the back pay that I rightly deserve?

In closing, I would like to thank you for your time and consideration. I know there will be some people unhappy that I reached out to your office. However I went through the chain of command and it did not work. If I receive any retaliatory action or blocking of career advancement, I will not hesitate to contact your office and reference this letter. I will happy to share a copy of any emails associated with this issue if need be. I look forward to hearing from you soon.

Sincerely,


Eddie E. Mitchell, Ph.D.

# EXHIBIT 2 – GOVERNOR RESPONSE

## STATE OF GEORGIA

OFFICE OF THE GOVERNOR

ATLANTA 30334-0900

Nathan Deal
GOVERNOR

Dear Dr. Mitchell:

Thank you for writing me with about your salary concerns with the Georgia Department of Corrections Human Resource office.  I appreciate the opportunity to hear your concerns and am grateful for your service to our nation.

I encourage you to contact the State Personnel Board under the Department of Administrative Services as this agency oversees state personnel administration. You may contact this office at the following address and telephone number:

**Department of Administrative Services**
Suite 1804, West Tower
200 Piedmont Avenue, SE
Atlanta, Georgia 30334-9010
404-656-5514
www.doas.state.ga.us

I hope this information is helpful.

*EXHIBIT 3 — TERMINATION NOTICE*



Geo*r*gia·

**Nathan Deal**
*Governor*

# GEORGIA DEPARTMENT OF CORRECTIONS
## *CORRECTIONS HUMAN RESOURCES MANAGEMENT*
### *P.O. Box 1529*
### *Forsyth, Georgia 31029*
### *478-992-5211*
### *FAX 478-992-5207*



**Homer Bryson**
*Commissioner*

December 18, 2015

Eddie Mitchell
32 West Bruce Street
McRae, GA 31055

Dr. Mitchell:

This is to notify you of your dismissal from employment with the Georgia Department of Corrections effective January 1st, 2016. Although this dismissal is effective at the first of next month, you are relieved of all your official duties effective immediately. You will be permitted to use your accumulated annual leave to remain in pay status until the effective date of your separation.

A copy of the Department of Labor Separation Notice (DOL-800) is attached to this letter.

You may request a review of this action from the Commissioner's Designee for Adverse Action within five (5) business days from the receipt of this Notice of Adverse Action. Your response may be in writing, in person, or both. If you wish to request a review in person, it must be an agreed upon time between 8 a.m. and 4:30 p.m. Monday through Friday. In order to coordinate your written response, personal response or both, please call the following person designated to consider your response:

COMMISSIONER'S DESIGNEE FOR ADVERSE ACTION
State Offices South at Tift College
300 Patrol Rd, Gibson Hall
Post Office Box 1549
Forsyth, GA 31029
PHONE (478) 992-5211  FAX (478) 992-5207

You may submit affidavits or other evidence in support of your written or personal response to this adverse action.

If you fail to respond to the Commissioner's Designee within five business days as set forth in this notice, you will waive all further review rights. As a result of a failure to respond, the adverse action will become final and effective on the above specified date without further notice.

_____
James R. Laine
Human Resources Director


_____          _____
Employee's signature (acknowledges receipt only)                    Date

cc:      Assistant Commissioner
         Legal Services Office Representative
         Commissioner's Designee for Adverse Action
         CHRM Adverse Action Coordinator


Record Retention:  Retain permanently in the official and local personnel files.

*Equal Opportunity Employer*



State of Georgia
Department of Labor

## SEPARATION NOTICE

1. Employee's
   Name    Eddie Mitchell _____    2. SSN    ⬛ - ⬛ - ⬛

   a. State any other name(s) under which employee worked:   n/a _____

3. Period of Last Employment:    From: 8/1/2014 _____    To:   12/31/2015 _____

4. REASON FOR SEPARATION:  ☐  a. LACK OF WORK
   ☒  b. If other than lack of work, state fully and clearly the circumstances of the separation. Type Below.

   At Will Dismissal

5. Employee received payment for: (Severance Pay, Separation Pay, Wages-In-Lieu of Notice, bonus, profit sharing, etc.)  DO NOT include vacation pay or earned wages.

   type of payment  n/a _____    in the amount of $ _____    for period from: _____    to: _____

   Date above payment(s) was/will be issued to employee: _____

   IF EMPLOYEE RETIRED, furnish amount of retirement pay and what percentage of contributions were paid by the employee:

   $ _____ per month    _____ % of contributions paid by employee.

6. Did this employee earn at least $3,500.00 in your employ?   ☒ YES   ☐ NO   If no, how much? $ _____

   Average Weekly Wage: $ _____

| Employer's Name | GEORGIA DEPARTMENT OF CORRECTIONS _____ | Ga. DOL Account Number    1  1  0  0  9  4  -  0  0 |
|---|---|---|

Employer's
Name    GEORGIA DEPARTMENT OF CORRECTIONS _____

Address   State Offices South at Tift Campus _____

300 Patrol Road _____

City  Forsyth _____ State  GA   Zip Code  31029

Employer's    Phone: (478) 992 - 5211   Ext. _____
Telephone No.   Fax: (478) 992 - 5178 _____

Ga. DOL
Account
Number    1  1  0  0  9  4  -  0  0
(Number shown on Employer's Quarterly Tax and Wage Report, Form DOL-4)

I CERTIFY that the above worker has been separated from work and the information furnished hereon is true and correct. This report has been handed to or mailed to the worker.

_Betsy Thomas_
Signature of Official, Employee of the Employer or authorized agent for the employer

Deputy Director,HumanResources
Title of Person Signing

12/18/2015
Date Completed and Released to Employee

### NOTICE TO EMPLOYER

At the time of separation, you are required by the Employment Security Law, OCGA Section 34-8-190(c), to provide the employee with this document, properly executed, giving the reasons for separation. If you subsequently receive a request for the same information on a DOL-1199FF, you may attach a copy of this form (DOL-800) as a part of your response.

### NOTICE TO EMPLOYEE

OCGA SECTION 34-8-190(c) OF THE EMPLOYMENT SECURITY LAW REQUIRES THAT YOU TAKE THIS NOTICE TO THE GEORGIA DEPARTMENT OF LABOR FIELD SERVICE OFFICE IF YOU FILE A CLAIM FOR UNEMPLOYMENT INSTRANCE BENEFITS.

DOL-800 (R-08/05)

Dr. Eddie E. Mitchell
GED Teacher, Telfair State Prison
210 Long Bridge Road
Helena, GA 31037
PH: 229-868-7721

*EXHIBIT 4 - GED Summary Report*

November 16, 2015

Department of Corrections Educational Administrators

RE: November GED Results

Dear Administrators,

I would like to provide a summary review of the GED program at Telfair State Prison and the November GED results. The program summary will cover the GED department at my arrival, where it is currently, and proposed changes for the future. Before starting the summary, I would like to thank Warden Danforth, Deputy Wardens Lewis, Gammage, and Harris for their support of the education department since my arrival.

When I arrived at Telfair State Prison on July 1, 2015, I was welcomed by Warden Danforth. He later introduced me to Deputy Warden Gammage. They both gave me a brief overview of the state of the education department. I was then taken to the education department where I met Dr. Spaulding and Mrs. Moore. Dr. Spaulding was the GED/ABE teacher and Mrs. Moore taught ABE and LRR. Since I was joining the team as a GED teacher, I hoped Dr. Spaulding would let me observe her classes and provide me insight into the program. However I found that was not the case. She was a bit cold and indifferent towards me and this was due to me being award the position instead of her. I was led to Mrs. Moore's classroom and observed her classes up until the Teacher's conference in Macon. There were no materials for me, no classroom, and no clear direction of what my duties would be going forward. In addition, the Chief Counselor/acting Deputy Warden of Care and Treatment took a position at the local high school. The department was in a state of confusion and had no defined direction.

My first duty after returning from the Teacher's conference was to help the eight students preparing for the upcoming GED test in August. As I reviewed their information in Scribe, I saw they had taken the test several times (3 to 4 times) and there were no new test takers even though the GED program had 70 – 80 students enrolled. Some students had been enrolled over 2 years without ever taking any part of the GED exam. I worked with test taking students for a little over a week while I started planning how to make the department more efficient and student centered. Seven students tested in August which produced 3 graduates. I then turned my attention to revising the department. My first order of business was to come up with a more sensible schedule. The students were coming once a week for a full six hour block. This schedule was not conducive to student learning. I came up with a two block schedule that allowed students to attend 4 days a week and provided tutorial services on Friday. With the new schedule approved, I decided to take math and science because those were the subjects that were least addressed under the old system. Most of the students had been introduced to RLA and social studies but not math and science. The initial implementation was tough because Dr. Spaulding and I were not a cohesive team. I had no classroom materials, textbooks, teacher aides, or filing cabinets for storage. However I pushed forward and finally had a staff of three aides within about 6 weeks. This left about 6 more weeks to fully prepare for the November test. The math and science scores from the November test were in large part accomplished in 6 weeks. This is a testament to the strong desire to learn by the students at Telfair State Prison. Please review the attached Excel spreadsheet of the testing data for a breakdown of the November testing data.

The current state of the department is much better now. As you can see we had around 20 first time test takers for the November test. Mr. Edwards challenged me with turning the department

around. I don't think he expected results like these this quickly. My relationship with Dr. Spaulding is so much better. She realized I did not get this position through nepotism and I am here to help in any way I can. We are united in solving the challenges to the program. Some of these challenges include movement of the students to school, textbooks, computers, and scheduling conflicts with counseling classes, religious services, and inmate shows. Please review the inventory table below to get an idea of our current resources. Note that all textbooks refer to the number of Steck-Vaughn textbooks currently available in the classroom.

| Name | RLA Texts | Social Studies Text | Math Texts | Science Text | Score Boost | Computers |
|------|-----------|---------------------|------------|--------------|-------------|-----------|
| Dr. Spaulding | 6 | 6 | 0 | 0 | 18 | 14 |
| Dr. Mitchell | 0 | 0 | 3 | 6 | 0 | 1 |

As for suggestions going forward, the first suggestion I have is move the schedule back to the 7:30 AM to 1:00 PM original two block form. The current schedule that breaks at 11:45 for lunch and goes to 2:30 PM causes a lot of conflicts. It conflicts with third block counseling classes, church service, and other third block activities that occur at 1:30 PM. If we return to the previous schedule, the only conflict would be the Thursday morning Bible Study session. The next issue is staff hiring. If possible we could really use another 29 hour teacher. This would better serve the ABE and LRR population. If a new teacher is out of the question, an education secretary would be a great help. The education supervisor's office is a mess. The filing cabinets need to be cleaned out so that student records can be stored and having someone to order educational supplies, ship inmate records, file inmate records, contact other facilities/school system, and log test results into Scribe would be invaluable. In addition it would be nice to have a graduation ceremony within a week of getting the results.

In closing, I would like to thank you for your time and consideration. Please review this information and meet as a team to consider my recommendations. I am very proud of the work we have done for the students at Telfair State Prison. In addition, teamwork has grown over my short tenure here. Although we are not perfect, there is no doubt positive change has occurred. With the addition of Deputy Lewis and our current teaching team, Telfair State Prison's education department has a bright future. I look forward to hearing from you soon.

Sincerely,


Eddie E. Mitchell, Ph.D.

*EXHIBIT 5 — Georgia Department Of LABor*

DOL-4428I(R-04/13)
NM2006

## GEORGIA DEPARTMENT OF LABOR
## CLAIMS EXAMINER'S DETERMINATION

SSN ___ ***-** ___

BYB ___ 12/21/15 ___

CWB ___ 12/20/15 ___

CAREER CENTER
4400
DUBLIN
910 N. JEFFERSON STREET
DUBLIN, GEORGIA 31021
FAX # (478) 275-6599

7000

| CLAIMANT | EMPLOYER |
|---|---|
| EDDIE E MITCHELL<br>32 WEST BRUCE STREET<br>MCRAE GA          31055 | GEORGIA DEPARTMENT OF<br>P O BOX 1180<br>LONDONBERRY  NH   03053 |

### SECTION I - CLAIM DETERMINATION

Benefits are allowed as of 12/20/15.

### SECTION II - LEGAL BASIS FOR DETERMINATION

Section 34-8-194 (2) (A) of the Employment Security Law says that you cannot be paid unemployment benefits if you were fired from your most recent employer for not following your employer's rules or orders. In addition, you may not be paid unemployment benefits if you were fired for failing to perform the duties for which you were hired, if that failure was within your control. You also cannot be paid benefits if you were suspended for any of these same reasons. The law says that your employer has to show that discharge or suspension was for a reason that would not allow you to be paid unemployment benefits. If you cannot be paid unemployment benefits under this section of the law, you may qualify at a later time. To do this, you must find other work and earn wages covered under unemployment law. The covered wages must be at least ten times the weekly amount of your claim. If you then become unemployed through no fault of your own, you may reapply for unemployment benefits.

### SECTION III - REASONING

You were fired and no specific reason was given to you. Your employer had not  warned you about your work not being acceptable. Because you were not aware of a problem, you had no opportunity to improve your work. For you to be disqualified, your employer must show that you failed to work as required. Your employer has not done so. The available facts show you performed the duties for which hired. Therefore, you can be paid unemployment benefits.

### SECTION IV - ACCOUNT CHARGEABILITY

NOTICE TO EMPLOYER:

### SECTION V - APPEAL RIGHTS

NOTE: This determination will become final unless you file an appeal on or before 01/25/16. If you file an appeal you must continue to report on your claim as instructed, or you will not be paid if you win your appeal. **You will be required to repay the benefits received during the disqualification period, if a determination allowing benefits is reversed by an appeal decision.** Refer to the Claimant Handbook booklet or contact an office of the Georgia Department of Labor for more details.

| Georgia Department of Labor | 01/05/16 | 01/08/16 |
|---|---|---|
| Claims Examiner | Date of Interview | Mail Date |

# EXHIBIT 6 – CORE VALUES

**Georgia Department of Corrections**

(Updated version December, 2012)

## OUR MISSION

The Department of Corrections creates a safer Georgia by effectively managing offenders and providing opportunities for positive change.

## VISION

The Georgia Department of Corrections is the best corrections system in the nation at protecting citizens from convicted offenders and at providing effective opportunities for offenders to achieve positive change. We are a leader and partner in making Georgia a safer, healthier, better educated, growing, and best managed state.

We accomplish this by:

- Ensuring public safety
- Operating safe and secure facilities
- Providing effective community supervision of offenders
- Creating opportunities for restoration to offenders
- Ensuring the rights of victims
- Partnering with public, private, and faith-based organizations
- Sustaining core values of Loyalty, Duty, Respect, Selfless
- Service, Honor, Integrity, and Personal Courage
- Ensuring the well being of employees and their families

## CORE VALUES

- Loyalty - Bear true faith and allegiance to the Constitutions of the United States and the State of Georgia, the GDC, and other employees.
- Duty - Fulfill your obligations.
- Respect - Treat people as they should be treated.
- Selfless Service - Put the welfare of the Public, the GDC, and other employees before your own.
- Honor - Live up to all the GDC values.
- Integrity - Do what's right--legally and morally.
- Personal Courage - Face fear, danger, or adversity (physical or moral).

EXHIBIT 7

EEOC Form 161 (11/09)

**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

## DISMISSAL AND NOTICE OF RIGHTS

| To: | Eddie E. Mitchell<br>32 West Bruce Street<br>Mcrae, GA 31055 | From: | Savannah Local Office<br>7391 Hodgson Memorial Drive<br>Suite 200<br>Savannah, GA 31406 |
|---|---|---|---|

☐ On behalf of person(s) aggrieved whose identity is
*CONFIDENTIAL (29 CFR §1601.7(a))*

| EEOC Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 846-2016-08251 | Janice D. Smith,<br>Investigator | (912) 920-4482 |

**THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:**

☐   The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

☐   Your allegations did not involve a disability as defined by the Americans With Disabilities Act.

☐   The Respondent employs less than the required number of employees or is not otherwise covered by the statutes.

☐   Your charge was not timely filed with EEOC; in other words, you waited too long after the date(s) of the alleged discrimination to file your charge

☒   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.

☐   The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

☐   Other *(briefly state)*

### - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, the Genetic Information Nondiscrimination Act, or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you. You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court. Your lawsuit **must be filed WITHIN 90 DAYS of your receipt of this notice**; or your right to sue based on this charge will be lost. (The time limit for filing suit based on a claim under state law may be different.)

**Equal Pay Act (EPA):** EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment. This means that **backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.**

On behalf of the Commission

_____
**Holly H. Aguilar,**
**Director**

MAY 3 1 2016
*(Date Mailed)*

Enclosures(s)

cc:   **Stephen Moody**
**Human Resources Compliance Manager**
**Georgia Department of Corrections**
**300 Patrol Road**
**Forsyth, GA 31029**

EXHIBIT 8 - Waiver of Service

AO 398 (Rev. 01/09) Notice of a Lawsuit and Request to Waive Service of a Summons

# UNITED STATES DISTRICT COURT
for the
### Southern District of Georgia

| | |
|---|---|
| Eddie Mitchell | ) |
| *Plaintiff* | ) |
| v. | )Civil Action No. |
| Georgia Department of Corrections, | ) |
| *Defendant* | ) |

## NOTICE OF A LAWSUIT AND REQUEST TO WAIVE SERVICE OF A SUMMONS

To: Homer Bryson, Commissioner of the Georgia Department of Corrections

**Why are you getting this?**

A lawsuit has been filed against you, or the entity you represent, in this court under the number shown above. A copy of the complaint is attached.

This is not a summons, or an official notice from the court. It is a request that, to avoid expenses, you waive formal service of a summons by signing and returning the enclosed waiver. To avoid these expenses, you must return the signed waiver within 30 days from the date shown below, which is the date this notice was sent. Two copies of the waiver form are enclosed, along with a stamped, self-addressed envelope or other prepaid means for returning one copy. You may keep the other copy.

**What happens next?**

If you return the signed waiver, I will file it with the court. The action will then proceed as if you had been served on the date the waiver is filed, but no summons will be served on you and you will have 60 days from the date this notice is sent (see the date below) to answer the complaint (or 90 days if this notice is sent to you outside any judicial district of the United States).

If you do not return the signed waiver within the time indicated, I will arrange to have the summons and complaint served on you. And I will ask the court to require you, or the entity you represent, to pay the expenses of making service.

Please read the enclosed statement about the duty to avoid unnecessary expenses.

I certify that this request is being sent to you on the date below.

Date: July 23, 2016

*Signature of the attorney or unrepresented party*

*Printed name*

Eddie Mitchell
*Address*
32 West Bruce Street,
McRae, GA 31055
*E-mail address*
mitch316ee@aol.com
*Telephone number*

*770-843-3897*



# GEORGIA EDUCATOR CERTIFICATE

### Georgia Professional Standards Commission
### 200 Piedmont Avenue, Suite 1702
### Atlanta, GA 30334-9032

*EXHIBIT 9A – TEACHER CERTIFICATION*

The Georgia Professional Standards Commission affirms that this individual has met the requirements for a Georgia Educator Certificate as indicated.

**Eddie E. Mitchell**

**32 West Bruce Street**

**McRae, GA 31055**

| Certificate Number | Date Printed |
|---|---|
| 466545 | 7/5/2016 |

| Certificate Level | Effective Date |
|---|---|
| 7 | 7/1/2002 |

| Title/Type | Field | Validity Period |
|---|---|---|
| SRT | EARTH/SPACE SCIENCE (6-12) [FLD753] | 07/01/12 TO 06/30/17 |
| SRT | MATHEMATICS (6-12) [FLD743] | 07/01/12 TO 06/30/17 |
| SRT | PHYSICS (6-12) [FLD751] | 07/01/12 TO 06/30/17 |
| SRT | SCIENCE (6-12) [FLD748] | 07/01/12 TO 06/30/17 |
| SRT | SP ED GENERAL CURRICULUM (P-12) CONSULTATIVE [FLD798] | 06/08/16 TO 06/30/17 |
| SRT | SP ED SCIENCE COGNITIVE LEVEL (P-5, 4-8, 6-12) [FLD922] | 06/08/16 TO 06/30/17 |

The Standard Professional teaching certificate is a Georgia professional certificate issued to educators who have completed all requirements for professional certification in a teaching field and applicable Special Georgia Requirements, but have not met experience requirements for the Performance-Based Professional certificate or are not evaluated on the statewide evaluation system. Educators who are not evaluated on the statewide evaluation system are evaluated by a school, district, or agency approved evaluation system.

Please see the last page for legends and other information

The holder of this certificate is responsible for being knowledgeable about current and revised rules.

**Kamila Benson Luigs**

Chair

Any alteration of this certificate will render it void

**Kelly C. Henson**

Executive Secretary

EXHIBIT 9B - STATISTICS CERTIFIcation

# RICE UNIVERSITY
# ADVANCED PLACEMENT
# SUMMER INSTITUTE

*HOUSTON, TEXAS*

*JULY 15-19, 2002*

## EDDIE E. MITCHELL

Has Completed 32 Hours
of Training and Instruction
in Topics Related to Teaching

## ADVANCED PLACEMENT
## STATISTICS

MARY B. MCINTIRE
DEAN
SCHOOL OF CONTINUING STUDIES

STATE BOARD FOR EDUCATOR CERTIFICATION (SBEC)
CONTINUING PROFESSIONAL EDUCATION PROVIDER NUMBER 500571

Dr. Eddie E. Mitchell
32 Bruce Street
McRae, GA 31055
PH: 770-843-3897

Georgia Department of Administrative Services
Suite 1804, West Tower
200 Piedmont Avenue, SE
Atlanta, Georgia 30334-9010
404-656-5514

December 20, 2015

RE: Retaliation

Dear Manager,

Now that I have had time to calm down after the events of Friday, December 18, 2015, I would like to respond in a more logical and evidence based manner. The termination letter personally delivered to me by Ms. Betsy Thomas was neither called for nor needed. I say this because why is an administrator from the office that has a grievance issue against it allowed to inflict further humiliation upon you? I have a local supervisor who writes my evaluation, Deputy Warden Cathy Lewis, regional supervisor in Dr. Vickers, central office supervisors in Mr. Stevie Edwards and Dr. Buster Evans, none of which were present at this event. All of these people are familiar with my work in progress, my accomplishments, and my goals as educator at the Department of Corrections yet none are present. The leader at this event is a representative from the office that I have filed a complaint with. A representative that is not an educator is unfamiliar with my qualifications, my effectiveness in the classroom, my effectiveness with colleagues and coworker, and my work ethic. All this representative truly knows is I filed a complaint about the handling of public funds in their office and I refused to let it go when suggested by the Director of that office.

Now I ask the Department of administrative serves to immediately revoke the termination notice. I ask this because the Department of Human Resources administration should not be allowed to retaliate for complaints of the handling of public funds entrusted to them. I would also like an investigation into why the administration is allowed to issue such retaliation to employees you have done a good job for the Department of Corrections in an area they have no expertise in. The only reason I emailed the director of human resources is I was instructed by Dr. Evans, after following the chain of command, to direct all further correspondence to Mr. Laine. Before being told of to this, I never heard of this person. Therefore there are no long term issues between us. So how could one event cause such an extreme action? Are there other issues involved in addition to the complaint? Are issues of race, disability, education level, and/or religion? A complaint of the handling of public funds should not trigger such an extreme response. This should not cause the issuance of a termination notice and it should not require a representative of that office to hand deliver it to make sure I would be served one week before Christmas. What better time to deliver this because most of the businesses would be closed or not hiring until after New Year. The intent is clear, undeniable, and unwarranted. I have witnessed other employees commit far worse offenses and not receive termination notices. For example, I seen sexual harassment complaints filed, negligence that led to harm or death of inmates, and verified misuse of government property and no termination notice was issued to these individuals.

What have I done since my arrival at the Georgia Department of Corrections? I have achieved one of the highest passing rates on the GED mathematics test while at Johnson State Prison, modified the education schedule to be more education friendly at Telfair State Prison, increased the number of inmates taking and passing GED at Telfair State, increased the morale of teachers and students at Telfair State, gained the trust and respect of deputy warden Lewis, Setup an official waiting list for students wanting to get into the GED program, received no write ups from

my supervisors, received no grievances from inmates, received above average performance evaluations and reached out to counseling to better serve the two departments. If you truly want to know about me and my work performance, interview the inmates that are in the GED program, interview the front line people I work side by side with everyday (teachers, counselors, library staff, and education correctional officers). Why should one the best performing teachers get a termination notice. Getting to the truth is crucial and I encourage a thorough investigation.

In closing, I ask that you revoke the termination notice, investigate the retaliation due complaint of handling of public funds, continue to look into my original complaint, and open an investigation into the possibility of discrimination (race, disability, religious, etc). I am attaching a copy of the state of the education department document that was sent to deputy warden Lewis, education manger Mr. Edwards, and regional principal Dr. Vickers. If necessary to revoke the termination letter, please include the Commissioner's Adverse Action Committee on your findings. I look forward to hearing from you soon.


Sincerely,

Eddie Mitchell, Ph.D.



```
Court Name: Southern District of Georgia
Division: 1
Receipt Number: AUG020594
Cashier ID: cadams
Transaction Date: 07/26/2016
Payer Name: EDDIE MITCHELL
--------------------------------
CIVIL FILING FEE
 For: EDDIE MITCHELL
 Amount:        $400.00
--------------------------------
CHECK
 Check/Money Order Num: 6685800523
 Amt Tendered:  $400.00
--------------------------------
Total Due:       $400.00
Total Tendered:  $400.00
Change Amt:      $0.00

EDDIE MITCHELL VS. GA DEPT OF
CORRECTIONS, ET AL.,
```