IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF GEORGIA
DUBLIN DIVISION

FILED
U.S. DISTRICT COURT
AUGUSTA DIV.

2017 MAY -3 P 2:05

CLERK J Burton
SO. DIST. OF GA.

| | |
|---|---|
| EDDIE MITCHELL, | * |
| Plaintiff, | * |
| v. | * CIVIL ACTION NO. 316-062 |
| GEORGIA DEPARTMENT OF CORRECTIONS, BETSY THOMAS, Director of Human Resources, and JAMES R. LAINE, Director of Human Resources (Retired), | * |
| Defendants. | * |

# O R D E R

Plaintiff Eddie Mitchell ("Plaintiff"), a black male who is proceeding *pro se*, is suing his former employer, the Georgia Department of Corrections, asserting claims of discriminatory discharge and retaliation. The case is presently before the Court on Defendants' motion for summary judgment. Upon consideration of the record evidence, the relevant law, and the briefs of counsel, the motion for summary judgment is **GRANTED**.

## I. BACKGROUND

A. Factual Background[1]

Plaintiff worked for Defendant Georgia Department of Corrections ("GDC") as a teacher at Johnson State Prison and then at Telfair State Prison from August of 2014 until his termination on December 18, 2015. (Pl.'s Dep. at 22, 26, 32, 85-86.) When the GDC hired Plaintiff, his initial salary was $73,477.07. (Id. at 51.) In the summer of 2015, however, Plaintiff came to believe his salary was incorrect based upon his prior experience. Plaintiff inquired of the Johnson State Prison human resources department, who forwarded the issue to the GDC's central human resources department in Forsyth, Georgia. (Id. at 48-49.) Defendant Betsy Thomas, the Deputy Human Resources Director at GDC, caused the matter to be reviewed. Ultimately, on August 7, 2015, the GDC approved an increase in Plaintiff's salary to $79,087.39 to reflect credit for Plaintiff's military service. (Id. at 50-52 & Ex. 4.) On August 19, 2015, Plaintiff inquired of the GDC whether he would be paid back pay for the salary difference. (Id. at 54-

---

[1] Plaintiff did not file a statement controverting Defendants' Statement of Material Facts (doc. no. 16-2) as required by Local Rule 56.1 of the Southern District of Georgia. Thus, all material facts set forth therein are deemed admitted so long as they are supported by the evidence, do not make credibility determinations, and do not involve legal conclusions. See E.E.O.C. v. Atlanta Gastroenterology Assocs., LLC, 2007 WL 602212, *3 n.2 (N.D. Ga., Feb. 16, 2007).

55 & Ex. 6.) Plaintiff was told he needed to go through his chain of command. (Id., Ex. 6.)

Meanwhile, Plaintiff also inquired as to why his salary did not reflect more years of actual teaching experience than it did. (Id. at 52, 57-59 & Ex. 5 & 7.) On October 16, 2015, Defendant Thomas issued a memorandum to Plaintiff advising him that he needed to supply the names of his prior employers so the GDC could verify his employment history.[2] Plaintiff complied with this request. (Id. at 63-64 & Ex. 9.) The GDC human resources department verified his experience, and Plaintiff's salary was again increased to approximately $89,000. (Id. at 61-62, 65-66.)

During this time, Plaintiff continued to seek back pay to the date of his hire. He contacted L.C. Buster Evans, Plaintiff's supervisor and Assistant Commissioner for the Division of Inmate Services at the GDC, to request his assistance with the back pay issue. (Id., Ex. 7.) Plaintiff also met with the GDC's Education Director, Stevie Edwards, to discuss his salary concerns; Mr. Edwards is below Mr. Evans in the chain of command. (Id. at 70-73 & Ex. 8.)

Defendant James R. Laine, the Human Resources Director at the GDC, reviewed Plaintiff's request and determined that the

---

[2] According to the GDC, Plaintiff had not initially provided the GDC with a clear employment record when he was hired. (Evans Aff. ¶ 5.)

GDC could not pay Plaintiff back pay because his initial lower salary was not the result of administrative error. (Laine Aff. ¶¶ 4-5.) On November 30, 2015, Defendant Thomas conveyed this decision to Plaintiff. (Pl.'s Dep., Ex. 11; Thomas Aff. ¶ 8.) Plaintiff disagreed and asked for the chain of command so that he could pursue the issue. (Pl.'s Dep., Ex. 11.)

On December 2, 2015, Plaintiff emailed Mr. Evans again requesting back pay. (Id., Ex. 12.) After receiving the email, Evans and Edwards agreed that Edwards would meet with Plaintiff with the intent of conveying the necessity to stop focusing on the back pay issue and to focus on teaching or risk losing his job. (Evans Aff. ¶ 7.) Edwards met with Plaintiff on December 7, 2015. (Pl.'s Dep. at 72-73.) Later that day, Plaintiff emailed Evans again requesting a meeting with Evans and the GDC Commissioner. (Id., Ex. 16.) The next morning, on December 8, 2015, Plaintiff emailed Evans again. (Id., Ex. 14.) Evans responded by email to Plaintiff:

> As indicated to you by Mr. Edwards, the interpretation by HR stands as the decision.
>
> . . . .
>
> As indicated to you, we have had several conversations with the leadership in our HR department. I cannot provide you with a decision other than that as has been determined by that department. I personally and professionally want your degree of satisfaction and commitment to be high to our work, and I'll do everything that I feel that I can to support that. In this matter, I

have exhausted my avenues for resolving your request.

(Id., Ex. 16.) Plaintiff again corresponded with Defendant Laine about the matter on December 9, 2015, to which Defendant Laine responded:

> Your continued insistence that you have been denied "rightful pay" or that you have not been communicated with concerning your pay levels are, at best, inaccurate. I believe it is time to put this matter to rest and that you spend your time working for the educational improvement of the inmates placed in your care.

(Id., Ex. 17.) Plaintiff responded, reiterating that while his current pay is correct, he will continue to pursue the back pay issue. (Id.) After receiving this last email on December 9, 2015, Defendant Laine consulted with Defendant Thomas and Mr. Evans and decided to terminate Plaintiff. (Laine Aff. ¶ 7.) Mr. Evans supported the decision, opining that Plaintiff was a weak employee and lacked an understanding of his role as a teacher not an administrator. (Evans Aff. ¶¶ 3, 10.) Defendant Thomas weighed in that Plaintiff's pay issues had taken much time and effort by her and her staff. (Thomas Aff. ¶ 10.) On December 18, 2015, Defendant Thomas personally delivered a termination letter signed by Defendant Laine to Plaintiff. (Laine Aff. ¶ 7 & Ex. D.)

B. **Procedural Background**

Plaintiff filed this lawsuit on July 26, 2016. He claims

5

that he was terminated because of his race and gender in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e *et seq.*[3]

Defendants filed the instant motion for summary judgment on March 29, 2017. The Clerk of Court gave Plaintiff notice of the summary judgment motion and the summary judgment rules, of the right to file affidavits or other materials in opposition, and of the consequences of default. (Doc. No. 17.) Therefore, the notice requirements of <u>Griffith v. Wainwright</u>, 772 F.2d 822, 825 (11th Cir. 1985) (per curiam), have been satisfied. Plaintiff filed a responsive brief, and Defendants filed a reply brief. The time for filing materials in opposition has expired, and the motion is ripe for consideration.

## II. SUMMARY JUDGMENT STANDARD

Summary judgment is appropriate only if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Facts are "material" if they could affect the outcome

---

[3] Plaintiff also asserted a claim of retaliatory discharge in his complaint; however, he abandoned this claim in response to Defendants' motion for summary judgment. (Doc. No. 18, at 14 ("Even though there is a retaliation element to this case, it is improper to pursue it under the venue of discrimination. The Plaintiff therefore retracts only this part of the complaint and will pursue this section under another venue.").) Accordingly, the retaliatory discharge claim is **DISMISSED**.

of the suit under the governing substantive law. <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 248 (1986). The Court must view the facts in the light most favorable to the non-moving party, <u>Matsushita Elec. Indus. Co. v. Zenith Radio Corp.</u>, 475 U.S. 574, 587 (1986), and must draw "all justifiable inferences in [its] favor," <u>United States v. Four Parcels of Real Prop. in Greene and Tuscaloosa Cntys.</u>, 941 F.2d 1428, 1437 (11th Cir. 1991) (en banc) (internal punctuation and citations omitted).

The moving party has the initial burden of showing the Court, by reference to materials on file, the basis for the motion. <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 323 (1986). How to carry this burden depends on who bears the burden of proof at trial. <u>Fitzpatrick v. City of Atlanta</u>, 2 F.3d 1112, 1115 (11th Cir. 1993). When the non-movant has the burden of proof at trial, the movant may carry the initial burden in one of two ways — by negating an essential element of the non-movant's case or by showing that there is no evidence to prove a fact necessary to the non-movant's case. See <u>Clark v. Coats & Clark, Inc.</u>, 929 F.2d 604, 606-08 (11th Cir. 1991) (explaining <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144 (1970) and <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317 (1986)). Before the Court can evaluate the non-movant's response in opposition, it must first consider whether the movant has met

its initial burden of showing that there are no genuine issues of material fact and that it is entitled to judgment as a matter of law. Jones v. City of Columbus, 120 F.3d 248, 254 (11th Cir. 1997) (per curiam). A mere conclusory statement that the non-movant cannot meet the burden at trial is insufficient. Clark, 929 F.2d at 608.

If - and only if - the movant carries its initial burden, the non-movant may avoid summary judgment only by "demonstrat[ing] that there is indeed a material issue of fact that precludes summary judgment." Id. When the non-movant bears the burden of proof at trial, the non-movant must tailor its response to the method by which the movant carried its initial burden. If the movant presents evidence affirmatively negating a material fact, the non-movant "must respond with evidence sufficient to withstand a directed verdict motion at trial on the material fact sought to be negated." Fitzpatrick, 2 F.3d at 1116. If the movant shows an absence of evidence on a material fact, the non-movant must either show that the record contains evidence that was "overlooked or ignored" by the movant or "come forward with additional evidence sufficient to withstand a directed verdict motion at trial based on the alleged evidentiary deficiency." Id. at 1117. The non-movant cannot carry its burden by relying on the pleadings or by repeating conclusory allegations contained

in the complaint. See Morris v. Ross, 663 F.2d 1032, 1033-34 (11th Cir. 1981). Rather, the non-movant must respond by affidavits or as otherwise provided by Federal Rule of Civil Procedure 56.

### III. LEGAL ANALYSIS

Plaintiff claims that his race and gender influenced the decision to terminate him. In support of their motion for summary judgment, Defendants argue Plaintiff cannot establish a prima facie case of race or gender discrimination, and in any event, cannot establish pretext.

Before examining Plaintiff's proof of the matter, the Court must first dismiss the individually named defendants in the case, Defendants Betsy Thomas and James R. Laine. Title VII prevents "employers" from discriminating on the basis of race, color, religion, sex or national origin. 42 U.S.C. § 2000e-2(a)(1). However, individual employees are not considered "employers" under Title VII. See Dearth v. Collins, 441 F.3d 931, 933 (11th Cir. 2006) ("[R]elief under Title VII is available against only the employer and not against individual employees whose actions would constitute a violation of the Act."). Accordingly, Defendants Thomas and Laine are entitled to summary judgment because Plaintiff has failed to state a claim against them.

Turning now to Plaintiff's claims against the GDC, in a Title VII disparate treatment case, such as the instant one, a plaintiff must be able to produce evidence of discriminatory intent, that is, that the employer's act of termination was taken because of the plaintiff's race or gender. See EEOC v. Joe's Stone Crab, Inc., 220 F.3d 1263, 1273-74 (11th Cir. 2000). To do so, a plaintiff can present direct evidence of discrimination, Wright v. Southland Corp., 187 F.3d 1287, 1293 (11th Cir. 1999), use statistical evidence, Alexander v. Fulton County, Ga., 207 F.3d 1303, 1327-28 (11th Cir. 2000), or rely on circumstantial evidence – commonly referred to as the McDonnell Douglas prima facie case, Wright, 187 F.3d at 1293.

Here, because Plaintiff has not offered direct or statistical evidence of discrimination in this case, he must rely upon the McDonnell Douglas framework. The McDonnell Douglas formula encompasses both a prima facie case and a burden-shifting scheme. This method of proof seeks to narrow a plaintiff's case to its most basic elements. Texas Dep't of Cmty. Affairs v. Burdine, 450 U.S. 248, 253 (1981). A plaintiff must first establish a prima facie case by showing that (1) he is a member of a protected class; (2) he was qualified for the position; (3) he suffered an adverse employment action; and (4) he was treated less favorably than

a similarly-situated individual outside his protected class. Maynard v. Board of Regents, 342 F.3d 1281, 1289 (11th Cir. 2003)(citations omitted). If a plaintiff establishes a prima facie case, a feather-weight burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the action in question. Holifield v. Reno, 115 F.3d 1555, 1564 (11th Cir. 1997). If the defendant carries its burden, the plaintiff retains the burden of persuasion to show that the employer's proffered explanation was not the real reason for the employment change, but was instead a pretext for discrimination. Texas Dep't of Cmty. Affairs, 450 U.S. at 256.

For purposes of argument, the GDC concedes that Plaintiff is a member of a protected class, that he is qualified for the position he held, and that his termination was an adverse action. The dispute here centers around whether or not Plaintiff has shown that he and someone of a different race or gender, who was similarly situated in all material respects and engaged in the same or similar conduct, were treated differently. If Plaintiff fails to show the existence of a similarly situated employee and there is no other evidence of discrimination, summary judgment is appropriate. See Holifield, 115 F.2d at 1562.

In this case, Plaintiff presents several employees who committed some rule violation or other offense during their employment with the GDC and were not terminated. Not one of these employees, however, failed to take "no" for an answer in relation to a pay inquiry and was not terminated. Instead, Plaintiff argues that the other purported comparators seemingly committed graver offenses and were not terminated;[4] thus, he claims his termination must have been based upon some other factor than his conduct. The Eleventh Circuit, however, has very clearly articulated that "[t]he comparator must be **nearly identical** to the plaintiff to prevent courts from second-guessing a reasonable decision of the employer." Caraway v. Sec'y, U.S. Dep't of Transp., 550 F. App'x 704, 709 (11th Cir. 2002) (emphasis added). Moreover, Plaintiff has failed to allege let alone show that the decisionmaker who terminated him, namely Defendant Laine, was involved with the discipline of these other employees or was even aware of their

---

[4] For instance, Plaintiff mentions a female nurse who brought a gun into Johnson State Prison, a black female librarian who allowed an inmate to gain access to an internet based program, and members of a nursing staff who sent an inmate back to his cell after complaining of a headache, and the inmate later died. (Compl., Doc. No. 1, at ¶ 9.) Apparently, none of these individuals were terminated. Plaintiff also points out a few instances of insubordination that did not result in termination, such as a white male who interrupted the Assistant Commissioner during a speech, a black female correctional officer who refused to take an assigned post, a black female teacher who left a meeting without permission, and another black female teacher who refused to return to her classroom upon command. (Id.) As stated, however, none of these employees are valid comparators, and Plaintiff's attempt to compare their offenses to his to establish a negative implication upon his own termination does not comport with the law in this Circuit on how to establish a prima facie case of discrimination.

12

misconduct. (Laine Aff., ¶ 9 ("These [purported comparators] and their circumstances never reached a level where they needed to be brought to my attention at the GDC central human resources office. I did not participate in any discussions regarding discipline for these alleged actions. Plaintiff's lawsuit is the first time I had any knowledge of these allegations.").) In short, Plaintiff has failed to draw the Court's attention to a valid comparator; thus, he has not established a prima facie case of gender or race discrimination. The GDC is entitled to summary judgment on this basis.

Even assuming Plaintiff could establish a prima facie case, the GDC has presented a legitimate non-discriminatory reason for Plaintiff's termination in his disregard of a management decision. This reason is supported by the record evidence. That is, the evidence shows that Plaintiff continued to challenge the back pay decision with various people and ignored the emails of two supervisors that he should drop the issue. Indeed, Plaintiff defiantly stated that he would continue to pursue the matter on December 9, 2015.[5] (Pl.'s Dep., Ex. 17 ("I can not put it to rest. . . . [This] is an issue that I will continue to pursue.").)

---

[5] In fact, Plaintiff next wrote a letter to Governor Nathan Deal's office on December 11, 2015. (Pl.'s Dep., Ex. 18.)

13

In the face of the GDC's non-discriminatory reason for Plaintiff's termination, Plaintiff has offered no evidence to establish pretext. To establish pretext, a plaintiff "must introduce significantly probative evidence showing that the asserted reason is merely a pretext for discrimination." Clark v. Coats & Clark, Inc., 990 F.2d 1217, 1228 (11th Cir. 1993) (citation omitted). "[The plaintiff] may succeed in this either directly by persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." Combs v. Plantation Patterns, 106 F.3d 1519, 1528 (11th Cir. 1997) (quoted source and emphasis omitted). The plaintiff may identify "such weaknesses, implausibilities, inconsistencies, incoherencies or contradictions in the employer's proffered legitimate reasons for its actions that a reasonable factfinder could find them unworthy of credence." Id. at 1538 (quoted in Alvarez v. Royal Atl. Developers, Inc., 610 F.3d 1253, 1265 (11th Cir. 2010)).

Plaintiff attempts to cast doubt on the GDC's non-discriminatory reason. Plaintiff introduces evidence of paperwork related to his termination and to his unemployment compensation claim that does not state the same reason for his termination. Rather, the separation notice states "At Will

Dismissal," (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. A), and the Termination Letter cites to a general involuntary separation regulation as opposed to a more specific one, (id., Ex. B). Further, the Georgia Department of Labor states that "no specific reason was given" to Plaintiff in its paperwork. (Id., Ex. C.) The lack of specificity in the paperwork, however, does not necessarily rebut the GDC's articulated justification for his termination. Indeed, the evidence is uncontradicted that the decision to fire Plaintiff was made after he disclosed that he would continue to pursue the back pay issue. The GDC's lack of explanation at the time of firing does not negate this evidence.

Plaintiff also continues to argue that the back pay issue was wrongly decided. He also contends that he was not a weak employee, but a good employee. These contentions, however, are irrelevant. The Eleventh Circuit has cautioned that in analyzing issues like this one, a court "must be careful not to allow Title VII plaintiffs simply to litigate whether they are, in fact, good employees." Rojas v. Florida, 285 F.3d 1339, 1342 (11th Cir. 2002). A plaintiff must "meet the proffered reason head on and rebut it, and the employee cannot succeed by simply quarreling with the wisdom of that reason." Brooks v. Cnty. Comm'n of Jefferson Cnty., Ala., 446 F.3d 1160, 1163 (11th Cir. 2006).

Finally, Plaintiff again falls back upon a list of employees who have had insubordinate offenses but were not terminated. (Pl.'s Opp'n to Def.'s Mot. for Summ. J., Ex. G.) However, there is no specific information about the employee (to include race and gender), the employees' offense, or the decision maker for the disciplinary action. The list is not probative of anything in the case.

In conclusion, Plaintiff simply cannot believe that he was fired for his defiance. His disagreement about the severity of the GDC's reaction to his conduct is not evidence of pretext, even if the Court agreed with Plaintiff that he was severely treated. "The employer may fire an employee for a good reason, a bad reason, a reason based on erroneous facts, or for no reason at all, as long as its action is not for a discriminatory reason." <u>Nix v. WLCY Radio/Rahall Commc'ns</u>, 738 F.2d 1181, 1187 (11th Cir. 1984). The sole concern is whether "unlawful discriminatory animus" motivated the adverse decisions. <u>Id.</u> In this case, Plaintiff presents no evidence that his employer acted with discriminatory animus.[6]

---

[6] Telling of Plaintiff's lack of evidence is his testimony at deposition when asked whether Defendant Laine ever said anything that was racially discriminatory; Plaintiff responded: "I don't know if I would say that, but I felt like he - he made a comment that made me, like I felt like I was just lying to him. . . . I don't think I would call it racial. I think it was kind of condescending." (Pl.'s Dep. at 43-44.) Moreover, when asked whether he believed the pay discrepancy was racially motivated, Plaintiff stated that it was not. (<u>Id.</u> at 47.)

Plaintiff's claims cannot survive summary judgment without evidence of discriminatory intent. He has presented none. Nor has he persuaded the Court that the GDC's proffered reason for firing him is unworthy of credence. Without evidence of discriminatory animus toward Plaintiff, the GDC is entitled to summary judgment on discriminatory discharge claims.

### IV. CONCLUSION

Upon the foregoing, Defendants' motion for summary judgment (doc. no. 16) is **GRANTED**. The Clerk is instructed to **CLOSE** this case and **ENTER JUDGMENT** in favor of Defendants. Costs are taxed against Plaintiff.

**ORDER ENTERED** at Augusta, Georgia, this 3rd day of May, 2017.

*[signature]*
UNITED STATES DISTRICT JUDGE